U.S. Bank N.A. v 687 King LLC (2024 NY Slip Op 51530(U))

[*1]

U.S. Bank N.A. v 687 King LLC

2024 NY Slip Op 51530(U)

Decided on November 14, 2024

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 14, 2024
Supreme Court, Bronx County

U.S. Bank National Association, AS TRUSTEE FOR 
 VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2017-2, Plaintiff(s),

against
687 King LLC; FRANCIS C. MCGUIRE, INDIVIDUALLY; JOHN DOE 
 (SAID NAME BEING FICTITIOUS TO REPRESENT UNKNOWN TENANTS/OCCUPANTS OF THE SUBJECT PROPERTY AND ANY OTHER PARTY OR ENTITY OF ANY KIND, IF ANY, HAVING OR CLAIMING AN INTERESTS OR LIEN UPON THE MORTGAGED PROPERTY), Defendant(s).

Index No. 803230/21E

Counsel for Plaintiff: McMichael Taylor Gray
Counsel for King: Alonso & Facher, P.C. 

Fidel E. Gomez, J.

In this action to, inter alia, foreclose on a mortgage and sell the real property encumbered thereby, defendant 687 KING LLC (King) moves seeking an order restoring its prior application, wherein it sought to reargue this Court's Decision and Order dated June 3, 2024. King proffers no reason in support of its application. Plaintiff does not oppose the instant application.
For the reasons that follow hereinafter, this Court treats the instant application as one to renew the denial of King's prior motion to reargue and upon renewal, grants reargument.
The instant action is for breach of contract, assignment of rents, replevin, foreclosure, and attorney fees and costs. According to the complaint, on May 15, 2017, King executed a promissory note (note), wherein it agreed to repay non-party, Velocity Commercial Capital, LLC (Velocity), $536,000 loaned to King by Velocity. On the same date, King executed a Commercial Mortgage and Security Agreement and Assignment of Leases and Rents (mortgage), which secured the note by pledging premises located at 692A King Avenue, Bronx, NY 10464 (692A) as security for the note. To further secure the note and mortgage, defendant FRANCIS C. MCGUIRE (Francis) executed a guaranty, wherein he agreed to guarantee the loan to King. On May 14, 2018, plaintiff subsequently purchased the note from Velocity and was also assigned the mortgage. King failed to abide by the terms of the note and mortgage inasmuch as it failed to make a required monthly payment due on October 1, 2020. Plaintiff accelerated all sums due under the note and King nevertheless failed to repay the loan. Francis also failed to make any payments due under the note and mortgage as required by the guaranty. Based on the foregoing, plaintiff interposes several causes of action. The first is for breach of contract, premised on King and Francis' failure to repay the loan as required by the note and mortgage. The second cause of [*2]action is for assignment of rents, as required by the terms of the mortgage. The third cause of action is for replevin, seeking the equipment and fixtures within 692A as required by the mortgage. The fourth cause of action is for foreclosure on the mortgage and the sale of 692A, premised on the terms of the note and mortgage. The last cause of action is for attorney's fees, premised on the terms of the note and mortgage.
On October 17, 2022, this Court granted plaintiff's motion, which, inter alia, sought the entry of a default judgment against King and Francis.
On October 18, 2023, this Court, granted, in part, King's motion pursuant to CPLR § 5015(a)(4), which sought to, inter alia, vacate this Court's Decision and Order dated October 17, 2022, which entered judgment against King. King saliently argued that it had not been duly served with the summons and complaint in this action. Specifically, King averred that Francis, upon whom the summons and complaint was served and who also bound King to the instant mortgage, was never a member of King, such that he was not authorized to bind King to the mortgage nor was he authorized to accept service on King's behalf. In granting the foregoing application to the extent of scheduling a traverse hearing, this Court held that King, with an affidavit by its sole member, nonparty Christopher F. McGuire (Christopher), rebutted service upon King, which is alleged to have been effectuated by delivering the summons and complaint to Francis, King's manager and/or agent. Specifically, the Court held that
[King] successfully meets the requisite burden because, in Christopher's affidavit, he asserts that he is the sole member and manager of [King] and that he never authorized Francis to accept service on behalf of [King] or appear on behalf of [King] in this action.
To the extent that King also sought vacatur of the Court's order entering a default judgment against it pursuant to CPLR § 5015(a)(1) and in the interests of justice, the Court noted that it would address those portions of the application after the hearing.
On June 3, 2024, after a traverse hearing in this action, in U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2017-2 v FCA AND V LLC A/K/A F C A AND V LLC, et al.,(Index No. 803227/21E), and in U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2017-2 v 687 King LLC, et al. (Index No. 803235/21E), this Court issued a Decision and Order, wherein it, inter alia, denied King's application seeking to vacate its default pursuant to CPLR § 5015(a)(4), noting that
[u]pon consideration of all the evidence offered at the traverse hearing, the Court finds that plaintiff credibly established that FCA and King were duly served with the summons and complaint in these three actions pursuant to CPLR § 311-a(a)(ii), when the same were handed to Francis at 688 King Avenue, Bronx, NY 10464 (688), the address listed within FCA and King's Articles of Organization.
The Court further held that
[h]ere, where the excuse for the instant default is the absence of service, an issue which has been resolved against FCA and King, the excuse proffered is unreasonable as a matter of law. Accordingly, irrespective of the merit of the defense to this action, vacatur pursuant to CPLR § 5015(a)(1) must be denied (Lutz at 450).
Thus, the Court never determined whether vacatur of the judgment issued against King was warranted in the interests of justice. 
On September 10, 2024, this Court denied King's prior application to reargue this Court's Decision and Order dated June 3, 2024, without prejudice, because King failed to submit working copies of its application as required by this Court's Part Rules.
King's motion seeking to restore its prior motion to reargue is treated as one for renewal [FN1]
and granted. Upon renewal, King's motion seeking reargument of this Court's Decision and Order dated June 3, 2024 is granted. Significantly, it is clear that in failing to address King's application seeking to vacate this Court's Decision and Order dated October 17, 2022 in the interests of justice, this Court misapprehended the facts. Upon reargument, because the default judgment granted against King was the result of Francis' fraud, the interests of justice warrant vacatur of the judgment.
 Standard of Review
CPLR § 2221(d)(1) authorizes the reargument of a prior decision on the merits and states that such motion
shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion.
Accordingly,
[a] motion for reargument, addressed to the discretion of the Court, is designed to afford a party an opportunity to establish that the court overlooked or misapprehended the relevant facts, or misapplied any controlling principal of law. Its purpose is not to serve as a vehicle to permit the unsuccessful party to argue once again the very questions previously decided
(Foley v Roche, 68 AD2d 558, 567 [1st Dept 1979]; see also, Fosdick v Town of Hemstead, 126 NY 651, 652 [1891]; Vaughn v Veolia Transp., Inc., 117 AD3d 939, 940 [2d Dept 2014]). Thus, because reargument is not a vehicle by which a party can get a second bite at the apple, a motion for reargument precludes a litigant from advancing new arguments or taking new positions which were not previously raised in the original motion (Foley at 567).
A motion to reargue must be made within 30 days after service of a copy of the underlying order with notice of entry (CPLR § 2221[d][3]; Perez v Davis, 8 AD3d 1086, 1087 [4th Dept 2004]; Pearson v Goord, 290 AD2d 910, 910 [3d Dept 2002]).

Applicable Law
It is well settled that a court has the power to vacate a default after the expiration of the one year prescribed by CPLR § 5015(a)(1) if the interests of justice warrant the same (Melendez v City of New York, 271 AD2d 416, 416 [2d Dept 2000]; ["Although we find unpersuasive the appellants' argument that their time to so move never began to run because the order with notice of entry which was served upon them was defective, this court's power to open judgments in the interest of justice is an inherent power that may be exercised even after the expiration of the [*3]one-year period within which such application should be made."]; Johnson v Sam Minskoff & Sons, Inc., 287 AD2d 233, 236 [1st Dept 2001]); State of New York v Kama, 267 AD2d 225, 225 [1st Dept 1999] [Defendant's failure to answer resulting in a default judgment entered against it was vacated in the interests of justice despite her five year delay in seeking vacatur. The court found the interests of justice mandated a vacatur of the default and a restoration of the case since the default was taken even though plaintiff knew that defendant lacked the ability to defend the action due to a mental disability and thus might have needed a guardian appointed to avoid the default). Thus, should the party seeking to vacate a judgment or order issued on default fail to move within the year prescribed, the court has the authority to entertain such motion, and if the circumstances warrant it, vacate the default in the interest of justice (id.). In such cases, however, the excuse for belatedly seeking to vacate a default judgment must be more compelling (id.; Siegel, NY Prac § 108, at 187 [3d ed] ["but if the year has expired the excuse for the default had best be all the more compelling"]).
However, it is equally well settled that the court's interests of justice powers are broader and also allow the vacatur of a default judgment on grounds not promulgated by CPLR § 5015(a) in order "to relieve a party from a judgment or order for sufficient reason and in the interest of substantial justice" (Matter of Cassini, 182 AD3d 13, 55-56 [2d Dept 2020]; see Woodson v Mendon Leasing Corp., 100 NY2d 62, 68 [2003]; Citimortgage, Inc. v Maldonado, 171 AD3d 1007, 1008 [2d Dept 2019]; U.S. Bank Nat. Ass'n v Losner, 145 AD3d 935, 937 [2d Dept 2016]; Goldman v Cotter, 10 AD3d 289, 293 [1st Dept 2004]; Gurin v Pogge, 112 AD3d 1028, 1030 [3d Dept 2013]; Bond v Giebel, 101 AD3d 1340, 1343 [3d Dept 2012]; Town of Greenburgh v Schroer, 55 AD2d 602, 602 [2d Dept 1976]; Rawson v Austin, 49 AD2d 803, 803 [4th Dept 1975]). Indeed, once equity as a basis for vacatur of a judgment is asserted, "the court's power is as broad as equity and justice require" (U.S. Bank Nat. Ass'n at 938; Mtge. Elec. Registration Sys., Inc. v Horkan, 68 AD3d 948, 948 [2d Dept 2009]). Thus, a court can relieve a party of its default by exercising its discretion when such relief is appropriate because the interests of justice so warrant (U.S. Bank Nat. Ass'n at 938; (Schutzer v Berger, 40 AD2d 725, 725 [2d Dept 1972]; Lane v Lane, 175 AD2d 103, 105 [2d Dept 1991]; Oneida Nat. Bank & Tr. Co. of Cent. New York v Unczur, 37 AD2d 480, 483 [4th Dept 1971). Generally, when ascertaining whether vacatur in the interests of justice is warranted, the court, sitting in equity, must look at the nature, substance, and relative merit of the relevant transaction, instead of its form (Norstar Bank at 546; see Skaneateles Sav. Bank v Herold, 50 AD2d 85, 89 [4th Dept 1975] ["We are mindful, however, that equity looks to substance and the merits rather than the form of a transaction."], affd, 40 NY2d 999 [1976]; Washer v Seager, 272 AD 297, 306 [1st Dept 1947] ["A court of equity looks to the merits and does not exalt form above substance."], affd, 297 NY 918 [1948]).
However, generally, "a court's inherent power to exercise control over its judgments is not plenary, and should be resorted to only to relieve a party from judgments taken through fraud, mistake, inadvertence, surprise or excusable neglect" (Matter of Cassini at 55-56 [internal citations and quotation marks omitted]; McKenna v Nassau County, 61 NY2d 739, 742 [1984]; Cohn v PROF-2013-M4 Legal Tit. Tr., 211 AD3d 805, 806 [2d Dept 2022]; Citimortgage, Inc. at 1008; Lounsbury v Kiehl, 255 AD2d 774, 775 [3d Dept 1998]). Stated differently,
[t]he whole power of the court to relieve from judgments taken through mistake, inadvertence, surprise, or excusable neglect is not limited by section 724; but in the [*4]exercise of its control over its judgments it may open them upon the application of any one for sufficient reason in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent
(Ladd v Stevenson, 112 NY 325, 332 [1889] [internal quotation marks omitted]). Even where there is no fraud, however, in the exercise of its discretion, a court can vacate a judgment in the interest of justice (Woodson at 68-69 ["Regardless of whether we accept plaintiff's or ATIC's interpretation of the decision, we conclude that Supreme Court abused its discretion in vacating the default judgment. If (as ATIC argues) Supreme Court's decision is read as having found that plaintiff was guilty of fraud, misrepresentation or misconduct and setting aside the default judgment on that basis, we hold that the court abused its discretion because the record does not support any such conclusion. On the other hand, if (as plaintiff argues) Supreme Court's decision made no finding of fraud, misrepresentation or misconduct, then the decision appears to have been based on the court's inherent discretionary power to vacate its own judgments. This also amounted to an abuse of discretion under the facts before us."]). 

In application, the foregoing means that the court can, for example, vacate a default judgment even when the prerequisites under CPLR § 5015(a)(1) - a meritorious defense and a reasonable excuse - have not been met (Matter of In re County of Genesee, 124 AD3d 1330, 1331 [4th Dept 2015] ["Although respondent did not establish either a reasonable excuse for the default or a meritorious defense to the foreclosure proceeding, the court did not abuse its discretion in granting the motion for sufficient reason and in the interests of substantial justice. Petitioner obtained the default judgment on February 24, 2014, and respondent moved to vacate it shortly thereafter, on March 4, 2014. In addition, respondent established both his ability to pay the taxes after the redemption period had ended and the lack of any prejudice to petitioner" [internal citations and quotation marks omitted].).
Similarly, the court can vacate a default judgment where although the same was appropriately entered, upon an application to vacate the judgment, the court is convinced that said judgment should never have been entered (Cohn at 806). In Oneida Nat. Bank & Tr. Co. of Cent. New York, respondent borrowed money from petitioner, defaulted by failing to repay said sum, and as such was subject to a judgment in favor of petitioner, said judgment issued upon respondent's failure to answer (id. 482). Concededly, petitioner established that because respondent defaulted under the terms of the loan to petitioner and also established a meritorious cause of action, a default judgment was entered (id. at 483). Despite respondent's concession that she owed the money for which judgment was entered" (Oneida Nat. Bank & Tr. Co. of Cent. New York at 483), the court vacated the judgment in the interests of justice because respondent's default had been occasioned by, inter alia, "her mental condition at the time the action was brought" (id. at 483).
A court can also vacate a default judgment in the interests of justice when the default gives rise to an injustice (U.S. Bank Nat. Ass'n at 938; Bond at 1343-1344). In U.S. Bank Nat. Ass'n, defendant Rodriguez' application to vacate the default judgment obtained against her was vacated in the interests of justice (id. at 938 ["Under the unique circumstances of this case, we find that Rodriguez was entitled to vacatur of the judgment of foreclosure and sale entered upon her default in the interest of substantial justice".]). Significantly, in that case, the court found [*5]that Rodriguez was duly served with process and nevertheless failed to timely interpose an answer (id. at 936-937). However, despite not demonstrating that vacatur was warranted pursuant to CPLR §5015, the court nevertheless vacated the judgment presumably because Rodriguez alleged that defendant Losner had fraudulently induced her to convey real property to him and thereafter moved to foreclose on said property (id. at 935 ["They alleged that Ronald B. Losner, a codefendant in the instant foreclosure action, fraudulently induced them to convey title to the subject property to him by representing that a document he gave them to sign as a mortgage loan agreement was, in fact, a deed to the property."]). In Bond, intervenor defendant moved to vacate a default judgment against its insured, the defendant, because the same, inter alia, had been procured by collusion between plaintiff and defendant (id. at 1342-1343). While the court concluded that vacatur pursuant to CPLR § 5015(a)(3), namely fraud, was unwarranted, it nevertheless vacated the judgment in the interest of justice, noting that the collusive effect of the agreement between plaintiff and defendant, which would financially avail plaintiff and defendants, disincentivised defendant from cooperating with intervenor defendant (id. at 1342-1343 ["Specifically, by virtue of the assignment agreement, Progressive is the only person or entity with an interest in vacating the default judgment, as the O'Rourkes have the potential to benefit financially by allowing that judgment to remain in effect. Without the judgment, neither plaintiff nor the O'Rourkes would stand to reap any significant benefit from action No. 2. Thus, the particular terms of the assignment agreement place the O'Rourkes in the unusual position of opposing Progressive's motion to vacate the substantial judgment entered against them. While the collusive nature of the assignment agreement may not have led to the default judgment, the financial benefit that the O'Rourkes stand to gain as a result of that agreement clearly provides them with an incentive to act in unison with plaintiff going forward. At the very least, to allow such a result offends our sense of justice and propriety and cannot be condoned. . . . Thus, regardless of the merits of action No. 2, vacatur of the default judgment in action No. 1 will uphold the integrity of the judicial process under the particular circumstances of this case"] [internal citations omitted].; see also Lane at 105-06 ["We further find that the default judgment was properly vacated in the interest of justice. It is well established that, independent of statutory provisions, the court rendering a judgment, in its inherent power and control over its own proceedings, may vacate that judgment where it appears that substantial justice will be subserved and injustice prevented thereby. The record at bar reveals that there may have been collusion between the plaintiffs and the defaulting defendants in the personal injury action to obtain the $12,000,000 default judgment."]). 
Additionally, because "[t]he court has inherent power, not confined rigidly by well-defined rules, to set aside a verdict or vacate a judgment and order a new trial in the interests of justice" (McCarthy v Port of New York Auth., 21 AD2d 125, 127 [1st Dept 1964]; see Block v Block, 153 AD2d 601, 602 [2d Dept 1989]), it can even vacate a judgment issued on the merits when the interest of justice warrants the same (Block at 601; McCarthy at 129). Thus, in McCarthy, the court vacated a verdict after trial, finding that defendant was liable for injuries sustained by plaintiff as a result of a fire at defendant's premises (id. at 128-129). Significantly, the court held that evidence proffered by defendant after the trial established that plaintiff had exaggerated the facts at trial and that given new evidence proffered by defendant, the verdict at trial might have been for defendant (id. at 128-129 ["Here the motion was based on irrefutable [*6]evidence. Without the exaggerated story of plaintiff and his witnesses, the jury might have returned a verdict for defendant . . . Thus, if the new trial order were reversed defendant could simply appeal from the resulting judgment and this Court would probably be warranted in ordering a new trial."]). In Block, the court vacated an order denying plaintiff's application for a downward modification of spousal maintenance payments while concomitantly granting defendant's application for maintenance arrears (id. at 601). Notably, the court held that the trial court "properly exercised its inherent power to vacate in the interest of justice its prior order which was based on mistaken information" (id. at 601).

 Discussion
In support of the instant motion, King directs the Court's attention to its prior Decisions and Orders, and the documents and/or testimony, which undergird them. 
Significantly, at the traverse hearing, as previously noted by this Court in its Decision and Order dated June 3, 2024, Christopher testified as follows. He is the owner and sole member of FCA and King. Christopher never appointed Virginia or Francis as managing agents for King or FCA. Since 1984, Christopher never collected rents at the properties owned by King and FCA, never paid the bills for the same, never looked at the bank accounts for King at Chase and Flushing Banks, and never made any repairs to those properties. The foregoing responsibilities were delegated to Virginia, who subsequently delegated the same to Francis. With respect to Francis' powers with respect to the foregoing properties, Christopher discussed the same with Francis and the same were limited as detailed above. Christopher never authorized Francis to accept process on behalf of King and FCA and never authorized Francis to sell any of the properties or mortgage the same. Christopher was never notified about the instant actions or the fact that Andrew, Christopher's other son, Frances and Virginia were served with process.
King also refers to the affidavit submitted in support of its motion to vacate the judgment in this action, wherein Christopher states that he did not become aware that Francis had borrowed money from plaintiff's predecessor in interest and encumbered 692A and that Francis lacked the authority to bind King by executing the note in this action. Christopher further states that he had no knowledge of the foregoing loans and that, until March 2023, after this Court issued a default judgment against King, he had no knowledge of this action. 
Lastly, King directs the Court's attention to its Decisions and Orders dated October 18, 2023 and June 3, 2024. In the former Decision and Order, the Court expressly reserved a decision on King's application to vacate the default judgment issued against it in the interests of justice until after the traverse hearing. However, in the latter Decision and Order, the Court never addressed whether vacatur of the foregoing judgment was warranted in the interests of justice.
Based on the foregoing, it is clear that reargument of this Court's Decision and Order dated June 3, 2024 is warranted inasmuch as the Court never addressed King's application seeking vacatur of the default judgment entered by the Court's Decision dated October 17, 2022 on grounds that the interests of justice mandated the same. 
As noted above, CPLR § 2221(d)(1) authorizes the reargument of a prior decision on the merits when it is demonstrated that the court misapprehended the facts and/or misapplied [*7]prevailing law (id. [" A motion for leave to reargue . . . shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion."]). Notably, because reargument is not a vehicle by which a party can get a second bite at the apple, a motion for reargument precludes a litigant from advancing new arguments or taking new positions which were not previously raised in the original motion (Foley at 567).
Here, King sought vacatur in the interests of justice both when it initially moved to vacate this Court's default judgment and subsequent to the traverse hearing. Specifically, King sought vacatur in the interests of justice in its memorandum in support of its motion to vacate the default judgement (NY St Cts Elec filing [NYSCEF] Doc No. 31 at 1, 4-7, Memorandum of Law in Support of Defendant 687 King, LLC's Motion to Vacate Judgment) and again in its post hearing memorandum in support of vacatur (NY St Cts Elec filing [NYSCEF] Doc No. 66 at 1, 13-8, Defendant 687 King LLC's Post-hearing Memorandum of Law in Further Support of Motion to Vacate Judgment). Lastly, in its Decision and Order dated October 18, 2023, this Court expressly reserved decision on whether the default judgment against King should be vacated in the interests of justice until after the traverse hearing. Despite the foregoing, this Court never addressed whether vacatur of the default judgment issued against King was warranted in the interests of justice. Accordingly, this Court misapprehended the facts and reargument is therefore warranted.
Upon reargument, this Court holds that vacatur of the default judgment issued against King is, in fact, warranted in the interests of justice. 
Again, it is well settled that the court's interests of justice powers are broader and also allow the vacatur of a default judgment on grounds not promulgated by CPLR § 5015(a) "to relieve a party from a judgment or order for sufficient reason and in the interest of substantial justice" (Matter of Cassini at 55-56; see Woodson at 68; Citimortgage, Inc. at 1008; U.S. Bank Nat. Ass'n at 937; Goldman at 293; Gurin at 1030; Bond at 1343; Town of Greenburgh at 602; Rawson at 803). Accordingly, a court can relieve a party of its default by exercising its discretion when such relief is appropriate because the interests of justice so warrant (U.S. Bank Nat. Ass'n at 938; Schutzer at 725; Lane at 105; Oneida Nat. Bank & Tr. Co. of Cent. New York at 483). When ascertaining whether vacatur in the interest of justice is warranted, the court, sitting in equity, must look at the nature, substance, and relative merit of the relevant transaction, instead of its form (Norstar Bank at 546; see Skaneateles Sav. Bank at 89; Washer at 306) and vacatur of a prior judgment is appropriate "to relieve a party from judgments taken through fraud, mistake, inadvertence, surprise or excusable neglect" (Matter of Cassini at 55-56 [internal citations and quotation marks omitted]; Woodson at 68; McKenna at 742; Cohn at 806; Citimortgage, Inc. at 1008; Lounsbury at 775). Indeed, the foregoing means that the court can, for example, vacate a default judgment even when the prerequisites under CPLR § 5015(a)(1) - a meritorious defense and a reasonable excuse - have not been met (Matter of In re County of Genesee at 1331), if the court is convinced that said judgment should never have been entered (Cohn at 806; Oneida Nat. Bank & Tr. Co. of Cent. New York at 483), or the default judgment gives rise to an injustice because the underlying facts evince fraud (U.S. Bank Nat. Ass'n at 938; Bond at 1343-1344). Indeed, the court can even vacate a judgment issued on the merits when the interest of justice warrants the same (Block at 601; McCarthy at 129).
Here, in its Decision and Order after the traverse hearing, this Court held that Francis was King's manager and therefore, despite Christopher's testimony to the contrary, "was able to accept service for these entities pursuant to CPLR § 311-a(a)(ii)" (NY St Cts Elec filing [NYSCEF] Doc No. 66 at 24, Decision and Order ). Thus, this Court held that Francis was duly served with the summons and complaint in this action, that therefore this Court had personal jurisdiction over King, that King failed to interpose an answer and that to the extent that King's excuse for failing to interpose an answer was the absence of service, its excuse for failing to answer was inexcusable as a matter of law (id. 31). 
While the foregoing sufficiently precludes vacatur of the default judgment issued against King pursuant to CPLR § 5015(a)(1) and (4), inter alia, the testimony at the traverse hearing nonetheless warrants vacatur of the default judgment in the interests of justice. 
To be sure, since the inception of Christopher's involvement in this action, within his affidavit, he has maintained that he was not aware that Francis had borrowed sums from plaintiff's predecessor in interest, that Francis had no authority to borrow any funds and bind King, and that, until March 2023, after this Court issued a default judgment against King, he had no knowledge of this action. At the traverse hearing, Christopher reiterated the foregoing and further testified that he was never notified about the instant action or the fact that Andrew, Frances and Virginia were served with process. 
Accordingly, on this record, it appears that Francis defrauded Christopher by executing the note and mortgage, by converting the proceeds of the loan and thereafter, by failing to notify Christopher about this action, and that King had been duly served with process. Under these circumstances, vacating the default judgment against King is warranted in the interests of justice because it appears that the judgment was procured by fraud (U.S. Bank Nat. Ass'n at 938; Bond at 1343-1344). Accordingly, reargument is granted and upon reargument the Court's judgment is vacated and King is allowed to interpose an answer and defend this action on the merits. 
Nothing submitted or urged by plaintiff [FN2]
warrants denial of the instant motion. 
First, contrary to plaintiff's contention, as discussed in detail above, this Court regrettably misapprehended the facts when it failed to address the portion of King's motion which sought to vacate the judgment entered against King in the interests of justice. Thus, reargument is indeed warranted.
Second and paradoxically, plaintiff spends the lion's share of its affirmation in opposition to this motion asserting that vacatur of the judgment entered against King is unwarranted pursuant to CPLR § 5015(a)(1) and (a)(4). The foregoing is obvious since this Court has already sided with plaintiff on these issues. However, King does not seek reargument of the portions of the Court's Decision and Order which denied vacatur of the judgment entered against King pursuant to CPLR § 5015(a)(1) and (a)(4). Thus, opposing reargument by raising these irrelevant issues makes no sense.
Third, to the extent that plaintiff contends that the record is bereft of any evidence of fraud, mistake, inadvertence, surprise or excusable neglect so as to warrant vacatur of the judgment entered against King in the interests of justice, such contention is without merit. 
Here, not only does the record evince that Christopher has and continues to contend that King was defrauded by Francis when he (Francis), without authority, mortgaged 692A, but the record also evinces that in furtherance of the foregoing fraud, Francis concealed from Christopher that King was served with process in this action thereby denying Christopher and therefore King, an opportunity to timely answer and litigate this action on the merits.
Again, when ascertaining whether vacatur in the interests of justice is warranted, the court, sitting in equity, must look at the nature, substance, and relative merit of the relevant transaction, instead of its form (Norstar Bank at 546; see Skaneateles Sav. Bank at 89; Washer at 306) and vacatur of a prior judgment is appropriate "to relieve a party from judgments taken through fraud, mistake, inadvertence, surprise or excusable neglect" (Matter of Cassini at 55-56 [internal citations and quotation marks omitted]; Woodson at 68; McKenna at 742; Cohn at 806; Citimortgage, Inc. at 1008; Lounsbury at 775). Indeed, the foregoing means that the court can, for example, vacate a default judgment even when the prerequisites under CPLR § 5015(a)(1) - a meritorious defense and a reasonable excuse - have not been met (Matter of In re County of Genesee at 1331), if upon an application to vacate the judgment, the court is convinced that said judgment should never have been entered (Cohn at 806; Oneida Nat. Bank & Tr. Co. of Cent. New York at 483), or default gives rise to an injustice because the underlying facts evince fraud (U.S. Bank Nat. Ass'n at 938; Bond at 1343-1344). Indeed, the court can even vacate a judgment issued on the merits when the interest of justice warrants the same (Block at 601; McCarthy at 129).
Here, the fraud alleged - that Francis hid this action from Christopher in order to hide Francis' fraud in procuring the loan at issue and binding King thereto and then hid from Christopher the fact that King had been served with process in this action - is fraud sufficient to warrant vacatur of the judgment entered against King in the interests of justice. To the extent that plaintiff urges that the fraud required for vacatur in the interest of justice is fraud perpetrated by the plaintiff who procured the judgment in an action, such assertion finds no support in the law. Indeed, in Woodson, upon which plaintiff relies, the court made no such finding. Instead, the court noted that while the moving defendant in that action sought to vacate a default judgment entered against it "pursuant to CPLR 5015 (a) (3) (involving fraud, misrepresentation or other misconduct)" (Woodson at 68), it was unclear whether the trial court had vacated the judgment pursuant to CPLR § 5015(a)(3) or in the interest of justice (id. at 69 ["Regardless of whether we accept plaintiff's or ATIC's interpretation of the decision, we conclude that Supreme Court abused its discretion in vacating the default judgment. If (as ATIC argues) Supreme Court's decision is read as having found that plaintiff was guilty of fraud, misrepresentation or misconduct and setting aside the default judgment on that basis, we hold that the court abused its discretion because the record does not support any such conclusion. On the other hand, if (as plaintiff argues) Supreme Court's decision made no finding of fraud, misrepresentation or misconduct, then the decision appears to have been based on the court's inherent discretionary power to vacate its own judgments. This also amounted to an abuse of discretion under the facts [*8]before us."]). Thus, the court clearly differentiated vacatur pursuant to CPLR § 5015(a)(3)[FN3]
, for which fraud by the person in whose favor a judgment was entered is required, and vacatur in the interest of justice, for which the fraud alleged need not be tied to the person who obtained the judgment.
Lastly, plaintiff argues that because Francis was, as determined by this Court at the traverse hearing, Christopher's agent and King's manager, any fraud committed by him should inure to Christopher and King's detriment rather than plaintiff. While this may ultimately prove to be true, it does not negate the fact that the fraud alleged is nevertheless, as a matter of law, a basis for vacatur of the judgment entered against King.
Although plaintiff repeatedly seeks to argue the ultimate merits of this action and whether King will ultimately be liable for the instant note and mortgage, this is not the issue currently before this Court. Rather, for purposes of this motion, the Court need not and is not making any factual determinations so as to bind the parties in any future dispositive motions or at trial. To be sure, the Court is merely asserting that the allegations made by King via Christopher, and the evidence proffered in support thereof, evince that for purposes of notice of this action, or as urged, the lack thereof, Christopher, who alleges to be King's only member, was never apprised of this action and that such failure was occasioned by Francis's fraud and concealment. Thus, when plaintiff asserts that "[t]here is no evidence Plaintiff knew Francis was acting without authority in granting the notes and mortgage to the plaintiff lender" (NY St Cts Elec filing [NYSCEF] Doc No. 126 at 18, Revised Affirmation in Opposition to Motion to Reargue), or that King is bound to the instant loan because "Christopher allowed his allegedly mentally compromised son unfettered authority to run and make all decisions for King, by himself and completely unsupervised" (id. at 19), it erroneously conflates the issues before this Court. Again, the grant of reargument does not mean that plaintiff has lost this action or that as urged, the Court is making any determination with respect to whether Francis had the ability to bind King to the note and mortgage owned by plaintiff. Instead, vacatur of the default judgment merely means that King will be allowed to interpose an answer and that this action will have to be litigated and ultimately decided on the merits. Again, the issue of fraud in the procurement of the instant loan, if any, and all other legal issues related thereto remain open and unresolved. It is hereby
ORDERED that this Court's Amended Decision and Order and Order Granting Default Judgment and an Order of Reference Commercial Foreclosure dated October 17, 2022 be hereby [*9]vacated. It is further
ORDERED that the Proposed Answer dated May 3, 2023 be deemed served and accepted. It is further
ORDERED that King serve a copy of this Decision and Order with Notice of Entry upon all parties within thirty (30) days hereof.
Dated: 11/14/24
Bronx, New York
HON. FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1:Renewal in this case is not granted pursuant to CPLR § 2221(e). Instead, renewal is warranted by the grant of permission in this Court's Decision and Order dated September 10, 2024, which denied King's prior application without prejudice. This, of course, meant that King, could remake its application without leave to renew. In any event, here, the renewal - or as sought by King - restoration is unopposed by plaintiff.

Footnote 2:Because the instant motion was denominated as one to restore, all of the papers in support and opposition thereto were previously submitted when the Court denied King's motion to reargue and the same was denied for the failure by all parties to submit working copies of the motion papers. Hence in support of this application, all papers were submitted by King, including plaintiff's opposition to King's motion to reargue.

Footnote 3:Indeed, CPLR § 5015(a)(3) authorizes the court to vacate a judgment, again, even if issued on default, if the proponent of such relief establishes that the judgment was obtained by "fraud, misrepresentation, or other misconduct an adverse party" (CPLR § 5015[a][3]). A party seeking vacatur under this section must establish that the judgment sought to be vacated was procured through fraud, misrepresentation or misconduct and the failure to establish the foregoing warrants denial of an application seeking to vacate the judgment (Citimortgage, Inc. v Bustamante, 2013 NY Slip Op 04304 [2d Dept 2013]; Yellow Book of NY L.P. at 1080-1081; Wells Fargo Bank N.A. V Hornes, 94 AD3d 755, 755 [2d Dept 2012]; Onewest Bank, FSB v Martinez, 101 AD3d 969, 969 [2d Dept 2012; Offen v Offen, 249 AD2d 108, 109 [2d Dept 1998]). Thus, demonstration of fraud by the adverse party is only required upon an application pursuant to CPLR § 5015(a)(3).